IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br>Master Docket Case No. 1:14-cv-01748<br>Honorable Matthew F. Kennelly |
| This document applies to:<br>*Dick Bechtholdt v. AbbVie Inc., et al.*<br>Case No. 15-cv-9652 | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE SPECIFIC CAUSATION TESTIMONY OF MORTON RINDER AND MOTION FOR SUMMARY JUDGMENT**

Ronald Johnson, Jr.
SCHACHTER, HENDY & JOHNSON PSC
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-4444
Fax: (859) 578-4440
Email: rjohnson@pschacter.com

Trent B. Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2252
Email: tmiracle@simmonsfirm.com

Christopher A. Seeger
Seeger Weiss LLP
55 Challenger Rd., 6FL
Ridgefield Park, NJ 07660
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com

Plaintiffs' Co-Lead Counsel *on behalf of* Plaintiff Bechtholdt

July 12, 2018

**INTRODUCTION**

Defendants AbbVie Inc., and Abbott Laboratories (collectively "AbbVie") seek summary judgment on the claims brought by Plaintiff Dick Bechtholdt based on his use of AbbVie's testosterone replacement therapy ("TRT") product AndroGel. AbbVie's motion should be denied because disputed issues of fact preclude summary judgment. For the reasons stated herein, AbbVie's motion to exclude the case-specific testimony of Morton Rinder, MD should also be denied. AbbVie argues that all claims fail because, should the Court grant AbbVie's Motion to Exclude Dr. Rinder's testimony, Plaintiff cannot offer admissible expert testimony to establish specific causation. However, AbbVie's motion to exclude Dr. Rinder's testimony should be denied because Dr. Rinder's testimony is reliable and admissible. AbbVie further seeks summary judgment on all of Plaintiff's claims based on application of Iowa law. Plaintiff disputes that Iowa law applies; instead, as explained herein, Illinois' choice of law rules weigh in favor of application of Arizona law. Disputed issues of fact preclude summary judgment under Arizona law and, if it were to apply, under Iowa law as well.

**LEGAL STANDARD**

This Court has set forth the legal standards to be applied on a motion under Fed. R. Evid. 702 and on a motion for summary judgment. *See* CMO 46; CMO 48.

**I.    ARIZONA LAW GOVERNS PLAINTIFF'S CLAIMS**

Defendants' Motion presumes that Iowa law governs Plaintiff's claims, presumably concluding Iowa law governs because Plaintiff's injury occurred while in Iowa, but Plaintiff submits that Illinois' choice of law rules require Arizona law be applied as Arizona has the most significant relevant contacts with Plaintiff's claims in this case. Plaintiff was an Arizona resident when he was prescribed AndroGel in May 2012 and when he suffered a heart attack in October 2012. *See* Ex. 1 (Bechtholdt Tr.) at 71. While he was physically in Iowa at the time of his heart attack, Plaintiff spent that summer in Iowa with his girlfriend. *See id.* at 72-3, 271. Plaintiff owned a home in Arizona. *See id.* at 71. Plaintiff never owned property in Iowa; his girlfriend owned the home they stayed in during summers spent in Iowa. *See id.* Mihaela Marin, MD, who prescribed AndroGel to Plaintiff in May 2012, maintains a practice in Arizona, provided treatment to Plaintiff in Arizona, and prescribed AndroGel to him in Arizona. Ex.

1

2 (Marin Dep.), at 16-17, 82, 84-5. Dr. Marin was detailed by AbbVie's representatives in Arizona. *Id.* at 178. In June 2012, from her office in Arizona, Dr. Marin ordered a testosterone test for Plaintiff, and the blood work was performed in Iowa. *Id.* at 88. Following that blood test, Dr. Marin, from her office in Arizona, ordered an increase in Plaintiff's AndroGel dose. *Id.* at 89-91.

### A. Illinois' Choice of Law Rules Govern and Require Application of Arizona Law

Plaintiff filed his Short Form Complaint directly in the Northern District of Illinois. Compl., Doc. 1. Plaintiff's case originates in this District, and the Court must apply Illinois choice-of-law rules. *See* CMO 47 (applying Illinois choice-of-law rules to determine what law governs punitive damages).

### B. Arizona Law Governs Plaintiffs Compensatory Damages Claims

Illinois courts employ the "most significant relationship" test to resolve conflicts. *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990).

> The Court must apply a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6 in light of relevant contacts identified by general provisions like § 145 (torts) and § 188 (contracts).

*In re TRT,* 2014 U.S. Dist. LEXIS 176877 at 49-51 (N.D. Ill. Dec. 23, 2014) ("The law of the place of the injury presumptively applies to plaintiffs' tort claims unless another jurisdiction has a more significant relationship with the occurrence and the parties"). Courts consider place of injury,[1] where the conduct that caused the injury occurred, the domiciles of the parties,[2] and where the parties' relationship is centered.[3] *Townsend*, 879 N.E.2d at 901. Generally, "the two most important contacts are the place where the injury occurred and place where the conduct causing the injury occurred." *Miller*, 914 F.2d at 978 (7th Cir. 1990). The Court also weighs relevant forum policies, and the states'

---

[1] If the place of injury is fortuitous, it is not an important contact. *Murphy v. Mancari's Chrylser Plymouth, Inc.,* 948 N.E.2d 233, 238 (Ill. App. Ct. 2011) (citing *Townsend*, 879 N.E.2d at 906). As articulated in the Second Restatement, "the place of injury can be said to be fortuitous . . . when for other reasons [the place of injury] bears little relation to the occurrence and the parties with respect to the particular issue." Restatement (Second) of Conflict of Laws, § 145 cmt. e)

[2] "Domicile" is a place, usually a person's home, to which the rules of Conflict of Laws sometimes accord determinative significance due to the person's identification with that place. Restatement (Second) of Conflict of Laws, § 11. "Home" is "the place where a person dwells and which is the center of his domestic, social and civil life." *Id.* § 12. *See also Townsend*, 879 N.E.2d at 898.

[3] *See Hernandez v. Cottrell, Inc.,* 2014 U.S. Dist. LEXIS 43023, at *17 (N.D. Ill. March 31, 2014) (quoting *Nichols v. G.D. Searle & Co.*, 668 N.E.2d 1101, 1103 (Ill. App. Ct. 1996)).

2

interests in the determination of the issue. *Id.* at 906-7. Here, Plaintiff submits that Arizona has a more significant relationship than Iowa:

- Plaintiff's myocardial infarction occurred while in Iowa. Ex. 1 at 73:7-9; 106:23-24.
- The conduct that caused the injury occurred in Arizona, where AndroGel sales representatives detailed Plaintiff's prescribing physician Dr. Marin. *See* Ex. 2 at 178.
- Plaintiff used AndroGel in Iowa, *see* Ex. 2 at 91, after Plaintiff saw Dr. Marin in Arizona to discuss starting AndroGel. *See* Ex. 1 at 233.
- He consulted with Dr. Marin about AndroGel while in Iowa. *See* Ex. 2 at 91:12-15.
- At the time he was prescribed AndroGel and at the time of his injury, Plaintiff's domicile was Arizona. Ex. 1 at 71-72. Although he was in Iowa at the time of his injury, he was an Arizona resident at that time, and has never lived or owned a home in Iowa. *Id.*

Relevant policy considerations favor Arizona law. "The basic policies underlying tort law are to provide compensation for the injured victims, and to deter intentional and deliberate tortious conduct by imposing punitive damages." *Bryant v. Silverman*, 703 P.2d 1190, 1195 (Ariz. 1985). Fully compensating an injured plaintiff is embodied in Arizona's Constitution, which reads: "No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person." Ariz. Const. art. 2, § 31. Among the states (Arizona, Illinois, and Iowa)[4] that have a relevant relationship to this case, Arizona's is most significant. Illinois' presumption that the law of the place of injury applies is overcome, and Arizona law governs Plaintiff's claims.

## II. DR. RINDER'S SPECIFIC CAUSATION TESTIMONY SHOULD NOT BE EXCLUDED

### A. Dr. Rinder's Opinion that AndroGel was a Substantial Contributing Factor To, and Caused, Plaintiff's Heart Attack is Admissible

Dr. Rinder reviewed the medical history, identified both inherited and acquired risk factors, and systematically ruled each potential risk factor in or out as having contributed to Plaintiff's injury. This is a valid differential etiology analysis and sufficient under *Daubert*. *See, e.g., Myers v. Illinois Central R. Co.*, 629 F.3d 639, 644 (2010). Dr. Rinder's case-specific opinions are the product of reliable methodology well-supported by medical records and extensive medical and scientific data and literature. These opinions are admissible under Fed. R. Evid. 702. AbbVie's arguments provide no

---

[4] AbbVie has asserted Affirmative Defenses under California law. *See* AbbVie's Notice of Affirm Defenses, Doc. 7. The only relationship California bears to case is that Plaintiff has resided there since filing his Complaint.

3

basis to exclude Dr. Rinder's opinions because they go to the weight of his opinion and should be addressed through "[v]igorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

     1.  *Dr. Rinder's Testimony Establishes Specific Causation as Required by Arizona Law*

Plaintiff must prove that AbbVie's negligence was a "substantial factor" in his injury. *Barrett v. Harris*, 86 P.3d 954, 960 (Ariz. Ct. App. 2004). Arizona follows the substantial factor test set forth in the Restatement (Second) of Torts § 431 and referenced in § 435. *Id.* Dr. Rinder's opinion[5] that "AndroGel contributed substantially to and in fact caused" Plaintiff's myocardial meets this standard.[6]

     2.  *Dr. Rinder Properly Applied Differential Etiology*

Dr. Rinder offers the case-specific opinion that "AndroGel contributed substantially to and in fact caused [Plaintiff's] myocardial infarction" Ex. 3, Rinder Rpt., at 21. To reach this conclusion, Dr. Rinder employed the same method that he uses in clinical practice as a cardiologist. *Id.* at 1. This is the same analysis that this Court has accepted before. *See, e.g.*, CMO 46 at 42-54. First, Dr. Rinder relied on the conclusions and plausible mechanisms set forth in his general causation opinion to rule in AndroGel as a possible cause of Plaintiff's heart attack. Ex. 3 (Rinder Rpt.) at 21. Dr. Rinder provided a detailed analysis of the specific characteristics of Plaintiff's heart attack and related them to the mechanisms by which testosterone increases heart attack risk. *Id.* at 20-21. Dr. Rinder reached his conclusion after a thorough review of Plaintiff's medical records, testimony, and cardiac catheterization films. *Id.* at 2. He also considered the contribution of Plaintiff's "premorbid health conditions and possible risk factors," specifically gender, age, weight, remote smoking status, controlled hypertension, lipid profile, mild obstructive sleep apnea and impaired glucose tolerance, as well as his medical, family and social history and concomitant medications. *Id.* at 21.

---

[5] Dr. Rinder further stated his opinion that Mr. Bechtholdt would not have had a heart attack if he did not take AndroGel. Ex. 4 (Rinder Dep.), at 398:13-17.
[6] Dr. Rinder's opinion also satisfies the standard that AbbVie contends applies under Iowa law, specifically that Plaintiff must prove "that a drug or chemical in fact caused the harm for which the plaintiff suffers." *See* Mot. at 2, quoting *Ranes v. Abbott Labs.*, 778 N.W.2d 677, 688 (Iowa 2010).

AbbVie's contention that Dr. Rinder failed to consider and rule out specific risk factors is incorrect. While acknowledging that weight is a "possible risk factor" for cardiovascular disease, Dr. Rinder considered and "ruled out [Plaintiff's] weight as a significant risk factor." Ex. 3 at 19.

> [Plaintiff] was mildly overweight at approximately 220 pounds, borderline obesity according to my calculations, and thus I have ruled out his weight as a significant risk factor in his case. [Plaintiff's] BMI is intermediate, in my opinion, and clearly not obese. Thus I do not consider his BMI to be contributing to his risk of CVE's.

*Id.* While Dr. Rinder agrees that obesity is a "minor risk factor" for cardiovascular disease (*id.* at 382:5-8), he does not believe it is an "independent risk factor" and only "as it relates to high cholesterol, hypertension and the development of left ventricular hypertrophy." *Id.* at 382:23-383:7. Dr. Rinder also considered and ruled out Plaintiff's prior smoking history as a risk factor for Plaintiff's CAD based on relevant medical literature. Ex. 3 at 18. *See also* Ex. 4 at 378:14-379:10. He also considered and either ruled in or out Plaintiff's other potential risk factors. *See, e.g.,* Ex. 3 at 18-19 (cholesterol); Ex. 4 at 368:15-370:3; 376:18-377:9 (age); *id. at* 379:22-380:14 (glucose). After considering Plaintiff's risk factors, Dr. Rinder concluded that "prior to November 2012, [Plaintiff] was at a moderate risk for CAD events." Ex. 3 at 19. He noted, based on his review of cardiac catheterization films, Plaintiff did not have "detectable arterial disease" and that, "apart from the thrombotically occluded RCA (right coronary artery), he only had mild to moderate CAD in the other vessels." *Id.* at 20.

Dr. Rinder's opinion is more than a statement that "because AndroGel can cause heart attacks, it was a specific cause of [Plaintiff's] injury." CMO 46, at *55. He considered Plaintiff's symptomatology prior to, during, and following his event, describing how Plaintiff's myocardial infarction occurred, and relates that to the specific mechanism of thrombosis accelerated by testosterone. Ex. 3 at 20-21. Based on his review of Plaintiff's coronary angiogram, Dr. Rinder concluded after the plaque rupture, "the thrombosis began due to exposure of plaque elements to blood platelets" *Id.* He described a "dynamic thrombotic process" at the site of the plaque rupture in the RCA, which accounts for Plaintiff's pain in the days leading up to his myocardial infarction. *Id.*

The fact that Dr. Rinder agrees that some other risk factors also contributed to his MI is not a basis for exclusion. Dr. Rinder is not required to "rule out" every other possible cause of Plaintiff's

5

heart attack, provided he explains why he does not believe the alternative cause is the sole cause of Plaintiff's injury. His thorough consideration and explanation of each possible risk factor satisfies this standard. *See Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 434 (7th Cir. 2013); CMO 46 at *42 (citing *Schultz*). Dr. Rinder has done just that; he also provided a "link between the facts or data [he] has [reviewed] and [his] conclusion" that AndroGel contributed substantially to and in fact caused Plaintiff's heart attack. CMO 46 at 50. AbbVie's motion should be denied.

### III. DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S DESIGN DEFECT CLAIM (COUNT I)

AbbVie contends pursuant to Iowa law Plaintiff's strict liability design defect claim fails because Plaintiff has not shown evidence of (1) an actual defect in AndroGel or (2) a feasible alternative design.[7] To prevail on a strict liability design defect claim under Arizona law, a Plaintiff must establish that the product "was in a defective condition unreasonably dangerous" in a condition "not contemplated by the consumer" *Dart v. Wiebe Mfg.*, 709 P.2d 876, 878 (Ariz. 1985) (citing Restatement (Second) of Torts, § 402(a) comment (g)). Arizona courts use the "risk/benefit" analysis (imputing the "hindsight" to the manufacturer) to determine whether it was reasonable for a manufacturer to put its product on the market. *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962–63 (Ariz. Ct. App. 2003). Plaintiff contends that, for men who were prescribed AndroGel for non-indicated symptoms or illusory "age-related" hypogonadism, there has never been any efficacy to treat such issues and, for those men, AndroGel provides no utility and any risk is unacceptable. *See* PSC's FTW Opp., Doc. 1807 at 60-66 (incorporated here by reference). The Court has already considered a challenge to a strict liability design defect claim asserted under Arizona law based on similar facts in *Nolte*. This Court determined based on Plaintiff's evidence that "the benefits that AbbVie claimed for treating men with 'Low T' did not exist," those benefits could not have outweighed the risks. CMO 47 at 46. The Court should apply the same ruling to the facts of this case and deny AbbVie's motion.

---

[7] Plaintiff does not contend that a safer alternative design would have avoided his injuries.

## IV. DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S STRICT LIABILITY FAILURE TO WARN CLAIM (COUNT II)

### A. Plaintiff's Strict Liability Failure to Warn Claim is Viable Under Arizona Law

AbbVie's Motion states it is entitled to summary judgment on this claim under Iowa law. However, Arizona recognizes a strict liability failure to warn claim. *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 948 (Ariz. 2016). AbbVie's Motion should be denied.

### B. AbbVie's Motion Fails under Arizona Law Because Plaintiff Would Have Heeded an Adequate Warning Had One Been Given

Under Arizona law, "the manufacturer's duty to warn is ordinarily satisfied if a proper warning is given to the specialized class of people that may prescribe or administer the product." *Dole Food Co. v. N.C. Foam Indus.*, 935 P.2d 876, 880 (Ariz. Ct. App. 1996). However, plaintiffs are afforded a "heeding presumption" under which it is presumed that the plaintiff would have heeded a stronger warning if one had, in fact, been given. *See Golonka v. GMC*, 65 P.3d 956, 968 (Ariz. Ct. App. 2003); *Head v. Eli Lilly*, 394 F. App'x 819, 820-21 (2d Cir. 2010). To rebut the presumption, AbbVie must introduce evidence that would "permit reasonable minds to conclude that the injured party would not have heeded an adequate warning." *Golonka*, 65 P.3d at 972. AbbVie failed to produce any such evidence. The uncontroverted evidence demonstrates, had Mr. Bechtholdt been informed about myocardial infarction risks, he would have stopped using AndroGel. Ex. 1 at 323:2-13. Arizona's heeding presumption precludes summary judgment.

## V. DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S NEGLIGENCE CLAIM (COUNT III)

### A. Arizona's Learned Intermediary Rule Does Not Bar Plaintiff's Negligent Failure to Warn Claim.

Like Iowa, Arizona law incorporates a version of the "learned intermediary" doctrine to define a drug manufacturer's duty to warn. However, Arizona's rule requires that the warning be "complete, accurate and appropriate." *Watts*, 365 P.3d at 49. Conveying a partial warning to a physician does not discharge AbbVie's duty to warn. In this case, there remains a dispute as to the adequacy of the warning such that a reasonable jury could determine AbbVie failed to provide a "complete, accurate, and appropriate" warning to Mr. Bechtholdt's physician. AbbVie's motion should be denied.

7

B.   **The Jury Could Find Plaintiff and His Physicians Would Have Altered Their Conduct if Warned about AndroGel's Heart Attack Risk Before 2012.**

AbbVie has failed to demonstrate "the fact-finder could not adopt the view of the nonmoving party based on the evidence in the record" whether Plaintiff or his physicians would have altered their conduct if AbbVie had provided an adequate warning about AndroGel's risk of myocardial infarction in 2012. *Lester,* 1994 U.S. Dist. LEXIS 2711, *7. Plaintiff must prove that, if Defendant issued a proper warning, he would not have taken AndroGel. *D'Agnese v. Novartis Pharm. Corp.*, 952 F. Supp. 2d 880, 890 (D. Ariz. 2013).[8] Because Plaintiff took a proactive role in his treatment and medical care (Ex. 5 (Newland Dep.) at 91:17-92:1), the jury could reasonably conclude that, if Plaintiff was concerned about a risk with AndroGel, he would have asked one of his doctors about that risk. *See In re NuvaRing*, 2013 WL 3716389, at *10 (E.D. Mo. July 12, 2013).[9] When Plaintiff saw Dr. Newland in September 2012, he requested Dr. Newland's "opinion on the testosterone treatment" and stated he had "some concerns about testosterone treatment." *Id.* at 32:3-14; 92:15-93:6. Dr. Newland testified, if she had the benefit of the 2015 label in 2012, she would have told Plaintiff about the risk of myocardial infarction. *Id.* at 44:7-21; 46:12-16. The evidence demonstrates, had Mr. Bechtholdt been informed about a possible increased risk of myocardial infarction, he would have stopped using AndroGel. Ex. 1 at 323:2-13. Dr. Marin agreed that the prescribing decision was a joint decision making process with the patient and that she would make the decision whether to prescribe a medication for her patient "with the patient's approval." Ex. 2 (Marin Dep.) at 30:16-22; 140:3-10. Dr. Marin ***did not*** state that, if asked, she would not have told Plaintiff about the risk of myocardial infarction, just that her recommendation would be the same. *Id.* at 120:4-9; 127:22-128:6. Dr. Marin was not asked, and did not address, whether she would ***refuse*** to tell the patient about heart attack risks if the patient had questions about it. It is a reasonable inference that a physician like Dr. Marin, who makes the prescribing decision "for the individual patient on an individual basis, based on that patient's presentation . . . with the patient's approval," would convey this information in response to a patient's

---

[8] *Rock v. Smith* (985 F. Suppl 2d 1066 (S.D. Iowa 2013), cited by AbbVie, is not to the contrary.
[9] *See In Re Prempro*, 586 F.3d 547, 569-70 (8th Cir. 2009) (noting a jury could conclude a physician would respect patients' wishes and not prescribe a drug if plaintiff was concerned about risks and chose not to take it).

8

concern or inquiry even if it is not her practice to routinely discuss that information. To conclude that Dr. Marin would not explain to Mr. Bechtholdt under any circumstances that the AndroGel label informed of a possible risk of myocardial infarction, would require an inference based on Dr. Marin's testimony. Such an inference is strictly the province of the fact-finder. *See Harley-Davidson Motor Co.*, 129 F.3d at 426. The testimony of Plaintiff's prescribing physician, Dr. Marin, is that she collaboratively made the prescribing decision with Plaintiff. A jury could find that, if Plaintiff were provided with an adequate warning about the risk associated with AndroGel, Plaintiff would never have been prescribed the drug. Taken together, Dr. Marin's and Plaintiff's testimony is sufficient to create a triable issue of fact as to the difference an adequate warning would have made.

## VI. ABBVIE IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM (COUNT IV)

AbbVie's motion as to Plaintiff's negligent misrepresentation claim hinges on the Court's application of Iowa law. Arizona law, not Iowa law should apply. Both Arizona and Iowa follow the elements of negligent misrepresentation as Restatement (Second) of Torts § 552. *See Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000); *Sain v. Cedar Rapids Comty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001). Under either Arizona or Iowa law, disputed issues of fact preclude summary judgment. AbbVie contends the Court should grant summary judgment because Plaintiff has the burden to show that he or his physician relied upon misrepresentations made by AbbVie. Reliance is an element of this claim under both Arizona and Iowa law. *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 827 F. Supp. 2d 893, 908 (S.D. Iowa 2011). While it is true Plaintiff has not identified direct evidence that Plaintiff or Dr. Marin relied upon any particular misrepresentation from AbbVie, in viewing the evidence in the light most favorable to Plaintiff, including Dr. Marin's frequent contact with AbbVie's sales representatives (Ex. 2 at 138:13-139:19) and Dr. Marin's testimony that she relies upon the drug manufacturer to provide "all the information" about a drug's risks to make an informed decision about whether to prescribe a medication (*id.* at 134:1-135:1-8), a jury could infer Dr. Marin relied upon AbbVie's representations to conclude AndroGel was safe and effective. As the Court has noted, "[a] plaintiff need not show that his (or … his physician's) reliance was the sole or even the

9

predominant influence; rather, it is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." CMO 48 at 18. The evidence is sufficient to support a finding that Dr. Marin relied on AbbVie's misrepresentations regarding the safety and efficacy of AndroGel in prescribing the drug for Plaintiff. AbbVie's motion should be denied.

### VII. DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT AS TO PLAINTIFF'S BREACH OF WARRANTY CLAIMS (COUNTS V AND VI) AND FRAUD CLAIM (COUNT VII)

AbbVie contends these claims fail because reliance is an element of Plaintiff's breach of warranty claims. Assuming that both Arizona and Iowa law require proof of reliance for these claims, as set forth in Section VI, *supra*, a reasonable jury could infer that Dr. Marin and Plaintiff relied on AbbVie's misrepresentations about AndroGel's safety and efficacy. Thus, AbbVie failed to establish, as it must, that there are no disputed issues of material fact and summary judgment should be denied.

### VIII. DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT AS TO PLAINTIFF'S CONSUMER PROTECTION CLAIM (COUNT VIII)

AbbVie argues this claim fails under Iowa law because Plaintiff cannot prove that Dr. Marin's prescription and his use of AndroGel resulted from a misrepresentation. However, just as with Plaintiff's negligent misrepresentation and other "warning-based" claims, disputed issues of fact preclude summary judgment. Second, under Arizona's Consumer Fraud Act, A.R.S. § 44-1522, the use of a false pretense, misrepresentation, concealment or omission of any material fact with the intent that others rely, is unlawful. Medication is "merchandise" for purposes of Arizona's Consumer Fraud Act. *Watts v. Medicis Pharm. Corp.*, 342 P.3d 847, 853 (Ariz. Ct. App. 2015). Although both Arizona and Iowa's consumer fraud statutes include exceptions for conduct complying with governmental regulations (*see* Iowa Code § 714H(1)(g); A.R.S. § 44-1523), whether AbbVie's conduct in marketing AndroGel complied with FDA regulations is a disputed issue. AbbVie's motion should be denied.

### IX. PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT IX)

Summary judgment is not warranted for Plaintiff's unjust enrichment claim for the reasons stated in the Court's prior ruling. *See* CMO 47 at 49.

### CONCLUSION

For the foregoing reasons, Defendants' motion to exclude expert testimony should be denied.

Dated: July 12, 2018                    Respectfully submitted,


                                                          */s/ Trent B. Miracle*
Trent B. Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2252
Email: tmiracle@simmonsfirm.com

Ronald Johnson, Jr.
SCHACHTER, HENDY & JOHNSON PSC
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-4444
Fax: (859) 578-4440
Email: rjohnson@pschacter.com

Christopher A. Seeger
Seeger Weiss LLP
55 Challenger Rd., 6FL
Ridgefield Park, NJ 07660
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com


Plaintiffs' Co-Lead Counsel *on behalf of* Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2018, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service to all parties/counsel registered to received copies in this case.

>   */s/ Brendan A. Smith*
>   Brendan A. Smith
>   SIMMONS HANLY CONROY
>   One Court Street
>   Alton, IL 62002
>   Phone: (618) 259-2222
>   Fax: (618) 259-2252
>   Email: bsmith@simmonsfirm.com